

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| | § | No. 08-13-00250-CV |
| | § | |
| | § | Appeal from |
| IN THE MATTER OF M.L.M., | § | |
| A JUVENILE. | § | 323rd District Court |
| | § | of Tarrant County, Texas |
| | § | |
| | § | (TC # 98263-J) |
| | § | |

**O P I N I O N**

This is an appeal from a juvenile proceeding which found M.L.M. to be delinquent under TEX.FAM.CODE ANN. § 51.03(a)(1)(West 2014). The trial court also entered a "no disposition" order after determining that there was no need for supervision of the juvenile. TEX.FAM.CODE ANN.§ 54.04 (West 2014).

The delinquency finding arises out a pleading which alleged that M.L.M. violated the "Organized Retail Theft" statute.[1] The trial court instead made a finding that M.L.M. was guilty of the "lesser included offense" of theft.[2] The issues on appeal ask whether the State under these facts could only pursue a conviction under the Organized Retail Theft statute, whether the theft charge is indeed a lesser included offense of Organized Retail Theft, and whether the evidence is

---

[1] TEX.PENAL CODE ANN. § 31.16 (West Supp. 2014).

[2] TEX.PENAL CODE ANN. § 31.03 (West Supp. 2014).

legally sufficient to support a finding of theft. The State questions whether these contentions are preserved for our review. For the reasons noted below, we find many of the issues are not properly preserved, and the issue that is properly before us should be overruled.

## FACTUAL SUMMARY

This proceeding arises out of events that took place at a Macy's Department store in Tarrant County on January 8, 2013.[3] Ian Pokluda, a loss prevention officer, was alerted that two females had entered the store. One of the females, an adult named Marketia Surrell, was well known to the store as a "refunder," which is someone who habitually returns goods, likely stolen, without any sales receipts. The juvenile, M.L.M., was accompanying Surrell on this day.

Ian Pokluda watched the two females on the store's surveillance cameras. He kept track of the clothing items that Surrell was selecting. After a time, both Surrell and M.L.M went into the same dressing booth with the items that Surrell had selected. Store surveillance footage showed they were in the dressing room for twenty-one minutes. Surrell came out with fewer items than she took in. Another Macy's clerk went into the vacated dressing room to count any clothing items left there. The security officer determined the number of items taken into the room did not match the number taken out and those left in the room.

Surrell, still accompanied by M.L.M., went to a register and initiated a refund transaction. After she and M.L.M. left the store, they were apprehended by Macy's loss prevention officers and asked to return to the store's loss prevention office. While en route to the office, M.L.M called someone on a cell phone to say that they had been apprehended. Surrell and M.L.M. were being escorted by two male Macy's security officers, and Catherine Aker, another Macy's store employee. When they were at the bottom of an escalator and inside the store, M.L.M made

---

[3] This case was transferred from our sister court in Fort Worth pursuant to the Texas Supreme Court's docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We follow the precedents of the Fort Worth Court to the extent they might conflict with our own. *See* TEX.R.APP.P. 41.3.

another call on the phone to a man later identified as Demon Barrett, who at that time was at the top of the escalator.

Demon Barrett rushed down the escalator, handed car keys to Surrell, and told her to run. Barrett then blocked the two male security officers who started to give chase. He put his hand in his clothing as if he had a weapon. Aker, the female Macy's employee, chased after Surrell, but Barrett tried to head her off and verbally threatened her. The local police department was notified and Surrell was apprehended several blocks from the store.

A search showed that Surrell had six items of clothing that had been stuffed inside of several girdles that she was wearing. A police officer testified that girdles are often used by shoplifters to compress items of clothing they are stealing. The officers doing the search were amazed at how tight the girdles fit on Surrell, which led the lead investigating officer to believe that she must have had assistance in putting the girdles on over the stolen items. The police recovered a total of $829.99 worth of stolen clothing on Surrell.

During the chase and apprehension of Surrell, M.L.M. had stayed in the store. The Macy's employees returned, found her, and escorted her back to the security office. Aker testified that M.L.M. admitted to helping put the girdle on Surrell. Other witnesses only recalled that M.L.M. denied any involvement in the theft. She identified Surrell as a relative who had picked her up from school and they had stopped by the store.

### PROCEDURAL BACKGROUND

The State alleged in its petition that M.L.M. violated TEX. PENAL CODE ANN. § 1.16(c)(3) (West Supp. 2014) by intentionally acting to "conduct, promote, or facilitate an activity in which the respondent receives, possesses, conceals, stores, barters, sells, or disposes of stolen merchandise, to wit: clothing items, of a value of more than five hundred dollars but less than

3

$1500." M.LM. waived a jury and agreed to proceed before a juvenile-court referee. *See* TEX.FAM.CODE ANN. § 51.09 (West 2014). At the adjudication hearing, the State called as witnesses Pokluda, the Macy's security officer, Aker, the female Macy's clerk, and an additional clerk who had searched the dressing room. Following the adjudication hearing, the docket sheet reflects a notation that M.L.M. was found guilty of the "lesser included offense of theft" of $500 to $1,500, with a citation to TEX. PENAL CODE ANN. 31.03 (West Supp. 2014).

The disposition hearing was held sixteen days later. The referee stated that: "I found you had engaged in delinquent conduct on basically a shoplifting charge." He recommended a "no disposition" outcome which was adopted by the district court. The disposition order recites that M.L.M. had engaged in delinquent conduct which is the focus of this appeal.

## ISSUES FOR REVIEW

M.L.M.'s brings three issues on appeal, all sharing a common thread. In Issue One, she contends that the State was required to pursue this case only under the "Organized Retail Theft" statute because that enactment exclusively deals with theft of "retail merchandise" which was at issue here. M.L.M. complains that the general theft statute under which she was found delinquent is supplanted by the more specific Organized Retail Theft statute by the doctrine of in *pari materia*. Accordingly, because the referee refused to find her guilty under the Organized Retail Theft statute, the referee could not find her guilty under the supplanted general theft statute.

In a related contention, M.L.M. claims in Issue Three that the general theft statute cannot be a "lesser included offense" of Organized Retail Theft because while both statutes cover the same conduct, Organized Retail Theft exclusively governs theft of "retail merchandise." In essence, she argues that one could never be convicted under the general theft statute for taking

4

retail merchandise. In Issue Two, M.L.M. challenges the legal insufficiency of the evidence to support any finding of delinquency because the only evidence of guilt pertains to taking retail store merchandise, which is exclusively governed by the Organized Retail Theft statute and she prevailed on that charge. In other words, she contends there is no evidence that she stole anything other than retail merchandise.

## ANALYSIS

To frame these issues, we begin with the text of two statutes. The relevant provisions of TEX. PENAL CODE ANN. § 31.16 (West Supp. 2014), titled the "Organized Retail Theft" provide:

> (b) A person commits an offense if the person intentionally conducts, promotes, or facilitates an activity in which the person receives, possesses, conceals, stores, barters, sells, or disposes of:
>
> > (1) stolen retail merchandise; or
>
> .    .    .
>
> (c) An offense under this section is:
>
> .    .    .
>
> > (3) a state jail felony if the total value of the merchandise involved in the activity is $500 or more but less than $1,500 . . . .

The relevant provisions of TEX. PENAL CODE ANN. § 31.03 (West Supp. 2014), titled "Theft" provide:

> (a) A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property.
>
> (b) Appropriation of property is unlawful if:
>
> > (1) it is without the owner's effective consent;
> > (2) the property is stolen and the actor appropriates the property knowing it was stolen by another; or
>
> .    .    .
>
> (e) Except as provided by Subsection (f), an offense under this section is:

5

. . .

(3) a Class A misdemeanor if the value of the property stolen is $500 or more but less than $1,500 . . . .

The history of the enactments provides some needed background. The earliest version of TEX.PENAL CODE ANN. § 31.03 was enacted in 1973 with this explanation textualized in Section 31.02:

> Theft as defined in Section 31.03 constitutes a single offense superseding the separate offenses previously known as theft, theft by false pretext, conversion by a bailee, theft from the person, *shoplifting*, acquisition of property by threat, swindling, swindling by worthless check, embezzlement, extortion, receiving or concealing embezzled property, and receiving or concealing stolen property.

TEX.PENAL CODE ANN. § 31.02 (West 2012)[Emphasis added]. The Court of Criminal Appeals has expressly endorsed the Practice Commentary to § 31.02 which stated: "No part of the old Penal Code produced more confusion, more appellate litigation, and more reversals on technicalities unrelated to the actor's guilt or innocence than the multitude of offenses proscribing criminal acquisitions of another's property." *Chance v. State*, 579 S.W.2d 471, 474 (Tex.Crim.App. 1979). Accordingly, the various theft statutes were consolidated into Section 31.03. *Id.*

But straying from the effort to consolidate theft offenses, the Legislature added the offense titled "Organized Retail Theft" in 2007. Act of June 15, 2007, 80th Leg. R.S., ch. 1274, § 1, 2007 TEX.GEN.LAWS 4258, codified at TEX.PENAL CODE ANN. § 31.16 (West Supp. 2014). The legislative history indicates the purpose was to address groups of people who were engaged in theft rings:

> Organized retail theft is a highly organized criminal activity that depends on many thieves organized by a central 'fence' who collects the stolen merchandise and then resells it to the general public. Last year, it was estimated that organized retail theft cost retailers and the American public more than $37 billion and Texans $100 million in sales tax revenues.

6

C.S.S.B. 1901 adds a new offense entitled 'Organized Retail Theft' to the theft provisions of the Penal Code and provides specific criminal penalties for persons charged with engaging in these activities. This bill also increases the penalty for those supervising one or more individuals engaged in organized retail theft. This bill authorizes an organized retail theft case to be prosecuted in any county in which an underlying theft could have been prosecuted as a separate offense.

House Comm. on Criminal Jurisprudence, Bill Analysis, C.S.H.B. 3584, 80th Leg., R.S. (2007) (available at http://www.lrl.state.tx.us/scanned/srcBillAnalyses/80-0/SB1901RPT.PDF). We have found no cases substantively construing the provisions of the Organized Retail Theft statute since it was enacted.

M.L.M. contends that because both of these enactments address the same conduct and the goods taken were "retail merchandise," only the Organized Retail Theft enactment can apply here because it is the more specific statute. The Court of Criminal Appeals has held that where a general statute, and a specific statute complete within itself, both proscribe a defendant's conduct, the defendant should be charged under the more specific statute. *Cheney v. State,* 755 S.W.2d 123, 127 (Tex.Crim.App.1988); *Williams v. State,* 641 S.W.2d 236, 238 (Tex.Crim.App. 1982). This rule is based on the in *pari materia* rule of statutory construction, which provides that if two statutes deal with the same general subject, have the same general purpose, or relate to the same person or class of persons, they are considered in *pari materia* and should, wherever possible, be construed to harmonize any conflicts. *Cheney,* 755 S.W.2d at 126; *Mills v. State,* 722 S.W.2d 411, 414 (Tex.Crim.App.1986). If there are irreconcilable conflicts between statutes as to elements of proof, or penalties for the same conduct, then the more specific statute controls. *Cheney,* 755 S.W.2d at 127; *Williams,* 641 S.W.2d at 239. In M.L.M.'s view, if a theft only involves retail merchandise, then only the Organized Retail Theft statute can apply.

The State responds that the Organized Retail Theft statute is designed for the distinct

7

purpose of addressing theft rings, or as it suggests, "Fagin-like conduct."[4] Thus what elevates ordinary shoplifting type theft to Organized Retail Theft is the organized activity of participants in a group. Moreover, the State contends that Section 31.03 primarily addresses the person getting the goods, and Section 31.16 targets the schemer.

Additionally, the State raises a waiver contention, arguing that the *pari materia* argument was never made before the referee or the district court below.[5] With this contention we must agree. To preserve error, a party must make a timely and specific objection. TEX.R.APP.P. 33.1(a); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex.Crim.App. 2002). The complaining party must also obtain an adverse ruling on the objection. *Ramirez v. State,* 815 S.W.2d 636, 643 (Tex.Crim.App. 1991).

Specifically with reference to the *pari materia* issue, the Court of Criminal Appeals has focused on the adequacy and timing of the objection made at trial. *Azeez v. State*, 248 S.W.3d 182, 193-94 (Tex.Crim.App. 2008)(holding that objection made at directed verdict stage and in motion for new trial were timely). The same is true for a number of court of appeals, including the Fort Worth court which guides our decision in this transferred case. *Rodriguez v. State*, 336 S.W.3d 294, 301 (Tex.App.--San Antonio 2010, pet. ref'd)(issue was waived when not raised until amended motion for new trial); *Short v. State*, 995 S.W.2d 948, 953 (Tex.App.--Fort Worth 1999, pet. ref'd)(failure to raise in *pari materia* claim before trial waives the complaint for appellate review); *Haywood v. State*, 344 S.W.3d 454, 465 n.2 (Tex.App.--Dallas 2011, pet. ref'd)(same).

---

[4] "This is him, Fagin," said Jack Dawkins; "my friend Oliver Twist." Dickens, Oliver Twist, in Three Novels (Hamlyn 1977) (Fagan being the Charles Dickens' character who recruited and trained a cadre of street urchins as pickpockets).

[5] The State raised the waiver argument in its Appellee's Brief and we were not favored with a Reply Brief responding to the waiver claim.

M.L.M. would not have had any occasion to raise this issue before, or even during the adjudication hearing, as there was no suggestion that the State was asking for a finding under a lesser included offense. But the bifurcated nature of the juvenile proceedings provided M.L.M. the opportunity to object to the referee's finding on the lesser included offense before or during the disposition hearing held sixteen days later. See *In re A.C.*, 48 S.W.3d 899, 905 (Tex.App.-Fort Worth 2001, pet. denied)(holding complaint made first in amended motion for new trial when juvenile had notice of the issue before trial and during both phases was untimely). By that time, it was clear the referee had considered theft as a lesser included offense. Accordingly, we overrule Issues One and Three.

This leaves Issue Two which challenges the sufficiency of the evidence to support the delinquency finding. Although appeals from juvenile court orders are generally treated as civil cases, we apply a criminal sufficiency of the evidence standard when we review a delinquency determination. *In re M.C.S., Jr.,* 327 S.W.3d 802, 805 (Tex.App.-Fort Worth 2010, no pet.); *In re M.D.T.,* 153 S.W.3d 285, 287 (Tex.App.-El Paso 2004, no pet.). The State is required to prove beyond a reasonable doubt that the juvenile engaged in delinquent conduct or conduct indicating a need for supervision. TEX.FAM.CODE ANN. § 54.03(f)(West 2014). In a legal sufficiency analysis, we view the evidence in the light most favorable to the verdict to determine whether *any* rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979); *Burden v. State,* 55 S.W.3d 608, 612 (Tex.Crim.App. 2001). The trier of fact is the sole judge as to the weight and credibility of witness testimony, and therefore, on appeal we must give deference to the fact finder's determinations. *Brooks v. State,* 323 S.W.3d 893, 894-95 (Tex.Crim.App. 2010). If the record contains conflicting inferences, we must presume the fact

finder resolved those facts in favor of the verdict and defer to that resolution. *Clayton v. State,* 235 S.W.3d 772, 778 (Tex.Crim.App. 2007). On appeal, we serve only to ensure that the fact finder reached a rational verdict, and we may not reevaluate the weight and credibility of the evidence produced at trial and in so doing substitute our judgment for that of the fact finder. *King v. State,* 29 S.W.3d 556, 562 (Tex.Crim.App. 2000).

M.L.M.'s legal sufficiency challenge as advanced in her brief essentially recasts her first and third issues as a legal sufficiency challenge. She contends there is no evidence that she stole anything other than retail merchandise. She suggests that is fatal to the State's case as the general theft statute finding must be based on theft of property other than retail merchandise.

Even in a non-jury trial, we measure the legally sufficiency of the evidence against a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997). "In a bench trial, the prosecution is not required to submit a lesser included offense charge to the trial judge. The trial court is authorized to find the appellant guilty of any lesser offense for which the State provides the required proof." *Shute v. State,* 877 S.W.2d 314, 314 (Tex.Crim.App.1994); *Leach v. State,* 35 S.W.3d 232, 237 (Tex.App.--Austin 2000, no pet.) (stating same). The referee found M.L.M. delinquent based on theft as defined by Section 31.03.[6] We review the evidence against a hypothetically correct theft charge under that statute. We decline to use a legal sufficiency challenge as a vehicle to re-urge the *pari materia* argument which was never raised below.

Limited to that review, we find sufficient evidence to support a theft finding. Both

---

[6] We note that no issue is made of any variance between the indictment which charges M.L.M. under the Organized Retail Theft statute and the delinquency finding which is premised on the general theft statute. M.L.M.'s argument in fact is that both these statutes cover the same conduct, which would be the antithesis of a material variance discussed in cases such as *Gollihar v. State,* 46 S.W.3d 243, 257 (Tex.Crim.App. 2001)("[W]hen faced with a sufficiency of the evidence claim based upon a variance between the indictment and the proof, only a 'material' variance will render the evidence insufficient.").

10

Marketia Surrell and M.L.M. went into a changing booth together. Later, Surrell had items of stolen clothing stuffed inside of several girdles that she was wearing. Based on his observations, a police officer surmised Surrell must have had assistance in putting the girdles on over the stolen items. Catherine Aker testified that M.L.M. admitted to helping put a girdle on Surrell. While other witnesses who were walking in and out of the office recalled only that M.L.M. denied any involvement in the theft, it was for the referee to assess the credibility of that testimony. Based on the circumstances of the clothes being concealed in the girdles while both M.L.M. and Surrell were together in a changing room, the inference that it would take two persons to put on the girdles, and the confession of M.L.M. to assisting in the act, we find sufficient evidence to support the finding that she assisted in the theft of the goods. For these reasons, we overrule all three issues and affirm the judgment of the trial court below.

January 30, 2015

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

11