**Neale Lynwood REGER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 57818.**

Court of Criminal Appeals of Texas, Panel No. 3.

May 21, 1980.

---

John Ellis, Dallas, for appellant.

Henry M. Wade, Dist. Atty., T. Michael Sutton, Richard E. Zadina and Richard G. Worthy, Asst. Dist. Attys., Dallas, and Robert Huttash, State's Atty., Austin, for the State.

Before ODOM, PHILLIPS and W. C. DAVIS, JJ.

## OPINION

W. C. DAVIS, Judge.

This is an appeal from a conviction for theft of service over $10,000. Punishment was assessed at ten years confinement.

In ground of error number one, appellant contends that the verdict of the jury is not supported by the evidence, in that there is no evidence to show that appellant intended to avoid payment. We disagree. Lars Linden, a professional pilot in the charter business, testified at trial that he received a phone call from the appellant on December 14, 1975. The appellant said that he was in Guadalajara, Mexico, and that he wanted to charter a flight from Guadalajara to Dallas the next day and from there to the Grand Cayman Islands. Linden told the appellant that the flight would cost approximately $10,000 and explained that he would have to be paid in cash, since he did not have credit information on the appellant. The appellant told the pilot that he was employed by the First Bank in Georgetown, Grand Cayman Islands. On December 15, 1975, Linden flew to Guadalajara, picked up the appellant, and flew back to Dallas. Linden drove the appellant to the Executive Inn that evening, and arranged to pick him up early the next morning for their flight to the Grand Cayman Islands. On the next day, Linden flew the appellant to Midland where they picked up two passengers; they then flew to El Paso. At El Paso, Linden went with appellant to a building that looked like a bank. The appellant entered the building and returned 15 minutes later with a "taped up attache case," which ap-

pellant intimated contained three or four hundred thousand dollars. From El Paso, Linden flew his passengers to McAllen. Linden testified that these stops were unexpected because he was under the impression when they left Dallas that they would fly directly to Georgetown.

At McAllen, the appellant met three men. There were discussions about trying to get gold across the border from Mexico and taking it to the Grand Cayman Islands. Linden explained to the appellant that he would not be a party to any gold smuggling operations. Shortly after this meeting, the LearJet left McAllen and flew to Montego Bay. After the party reached its destination, Linden prepared a cash invoice for appellant. Appellant told him to make the bill out to Adobe Minerals, and gave him an address in West Texas. State's Exhibit Number One, the invoice for $11,964.40, was introduced into evidence.

After the appellant returned from a meeting with his purported employer, Mr. Stroup, Linden asked him if he had obtained the money. Appellant replied that he did not have a chance to get the money. Linden testified that it was customary in his business to be paid when the passenger reached his destination. Linden became suspicious, so he got a taxi and tried to find First Bank of Georgetown, where appellant had represented to him that he was employed. Linden was unable to find anyone who had even heard of the bank. Linden did find the address of Bill Stroup. When Linden talked to Stroup, Stroup denied any association with appellant and any responsibility for appellant's actions.

Linden returned to the hotel and told appellant that they were not going to leave the island until he had been paid. By December 21, 1975, it became apparent to Linden that he was not going to be paid, so they prepared to return to Dallas. Appellant told Linden that he had paid the hotel bill and the fuel bill.[1] As they were boarding the plane to leave, the fuel attendant confronted Linden and was angry because

the fuel bill for $328 had not been paid. Appellant first maintained that he had paid the bill, then admitted that the bill had not been paid. Linden went back to the hotel to persuade the manager of the hotel to extend credit to him on his credit card, so that he could pay the fuel bill. When he arrived at the hotel, he was informed that the hotel bill had not been paid either.

After they arrived in Dallas, Linden drove appellant to the hotel that he had stayed in the week before. While Linden was with the appellant in his room, the hotel manager knocked on the door, and told the appellant that because he had walked his bill the week before, he could not leave the hotel until the bill was paid or she would call the police. Linden paid the $291.95 bill because, as he put it, "I was very interested in his staying in circulation at least long enough to pay me." Linden testified that he was never paid by the appellant.

■ Section 31.04(b)(1), V.T.C.A. Penal Code provides:

"For the purposes of this section, intent to avoid payment is presumed if

(1) the actor absconded without paying for the service in circumstances where payment is ordinarily made immediately upon rendering of the service, as in hotels, restaurants, and comparable establishments;"

We find that the evidence is sufficient to show intent by appellant to avoid payment. Ground of error number one is overruled.

■ In ground of error number two, appellant contends that the trial court did not have jurisdiction of the case because "whatever promise" was made by the appellant took place in Guadalajara, Mexico, and not in Dallas. Section 31.04(a)(1), supra, provides:

"A person commits theft of service if, with intent to avoid payment for service that he knows is provided only for compensation:

---

1. Linden stated that it was customary for the passenger to pay hotel expenses. He explained

that appellant had agreed to pay the fuel bill because of all the trouble he was causing.

(1) he intentionally or knowingly secures performance of the service by deception, threat, or false token;"

V.T.C.A. Penal Code, Sec. 1.04 provides, in part:

"(a) This state has jurisdiction over an offense that a person commits by his own conduct or the conduct of another for which he is criminally responsible if:

(1) either the *conduct or a result that is an element of the offense* occurs inside this state;" (Emphasis added)

The performance of the service for which this offense arose was secured in Dallas, as a result of the appellant's phone call. Therefore, jurisdiction in this State was proper. See *Shappley v. State*, 520 S.W.2d 766 (Tex.Cr.App.1974). The ground of error is overruled.

■ In appellant's third ground of error, he contends that there is fatal variance between the allegations in the indictment and the proof adduced at trial because "the indictment fails to allege an aggregation of amounts herein although the proof is directed toward such aggregation." We find no merit to this contention. See V.T.C.A. Penal Code, Sec. 31.09. The ground of error is overruled.

■ In ground of error number four, appellant contends that the trial court erred in allowing proof of extraneous offenses committed by appellant to be introduced into evidence. At trial, William Lyle, owner of Lyle Area Aerial Service in Lubbock, testified that at four a. m. on January 25, 1976, he received a call from the appellant concerning a charter flight from Lubbock to Brownsville. Lyle told the appellant that the cost would be $750. The next morning, Lyle flew the appellant to Brownsville. The appellant paid Lyle with a counter check, drawn on the Lamesa National Bank. The check was subsequently returned to Lyle marked "Unable to Locate." Lyle further testified that he has never been paid for the trip. We find that this evidence was admissible to prove intent by the appellant to avoid payment. See *Christiansen v. State*, 575 S.W.2d 42 (Tex. Cr.App.1979). The ground of error is overruled.

■ In ground of error number five, appellant contends that the trial court erred in allowing State's Exhibits 8a and 8b to be introduced into evidence. Exhibit 8a is a letter to the Deputy District Clerk of the 195th Judicial District Court from the assistant district attorney, certifying that a copy of the enclosed affidavit was sent to the appellant's attorney. Exhibit 8a was introduced for purposes of the record only, and was not shown to the jury. Exhibit 8b is an affidavit from the Vice-President of Lamesa National Bank which states that he made a thorough and diligent search of the bank records and could not find a checking account in appellant's name. On appeal, appellant complains that the affidavit is hearsay. Appellant did not object on this ground at trial; therefore, nothing is preserved for review. See *Hebert v. State*, 586 S.W.2d 529 (Tex.Cr.App.1979). The ground of error is overruled.

■ In supplemental ground of error number one, appellant alleges that the indictment is fundamentally defective because it fails to allege an offense. The indictment reads, in pertinent part:

"Neal Lynwood Reger hereinafter styled Defendant, on or about the 15 day of December in the year of our Lord One Thousand Nine Hundred and 75 in the County and State aforesaid, did unlawfully, and with intent to avoid payment for a jet charter service from December 15, 1975, through December 21, 1975, that the said defendant knew was provided by one Lars Linden only for compensation, did knowingly secure performance of said service of the value of $10,102.40, being over the value of $10,000, by deception, to-wit: promising to pay the said Lars Linden in cash for said charter service without the intention at the time said promise was made to pay the said Lars Linden for a said service   .   .   ."

V.T.C.A., Penal Code, Sec. 31.04 provides, in part:

(a) A person commits theft of service if, with intent to avoid payment for ser-

vice that he knows is provided only for compensation:

(1) he intentionally or knowingly secures performance of the service by deception, threat, or false token; . . .

(b) For purposes of this section, intent to avoid payment is presumed if

(1) the actor absconded without paying for the service in circumstances where payment is ordinarily made immediately upon rendering of the service, as in hotels, restaurants, and comparable establishments; . . ."

We find that the indictment in this case contains all of the elements necessary to charge the offense of Theft of Service. The ground of error is overruled.

We have examined appellant's pro se grounds of error, not heretofore discussed, and overrule the same.

The judgment is affirmed.